# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

Aaron M. Burns,          )
    Petitioner,        )
                    )
v.                      )        1:17cv683 (LO/MSN)
                    )
Harold Clarke,         )
    Respondent.       )

## MEMORANDUM OPINION

Aaron M. Burns, a Virginia inmate proceeding pro se, has filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254,[1] challenging his convictions of multiple sex offenses in the Chesapeake Circuit Court.[2] Now before the Court are respondent's Motion to Dismiss and Rule 5 Answer, along with a supporting brief and exhibits.[3] Dkt. Nos. 11–13. Petitioner was provided the notice required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7K, Dkt. No. 14, and has filed a response. Dkt. No. 19. For the following reasons, respondent's Motion to Dismiss will be granted, and the petition will be dismissed, with prejudice.

## I. Background

Aaron Michael Burns, ("Burns" or "petitioner"), is in custody pursuant to a March 3, 2015 order of the Circuit Court for the City of Chesapeake, Virginia. Dkt. No. 17 at 161–63.

---

[1] This is petitioner's second habeas corpus petition in this Court; his first petition challenged a plea agreement in the Norfolk Circuit Court. See Burns v. Clark, 1:16cv1276 (LO/TCB). Therefore, the instant petition is not successive.

[2] Pursuant to a plea agreement, Burns pleaded guilty to one count of taking indecent liberties with a child by a person in a custodial role, and two counts of aggravated sexual battery. See Circuit Court for the City of Chesapeake Case Nos. CR14-669-00, CR14-669-01, and CR14-669-03).

[3] Also pending is petitioner's Motion for Continuance, Dkt. No. 18, in which he requests a "thirty (30) day continuance" to file an opposition to the respondent's Motion to Dismiss. That motion will be denied as moot; however, petitioner's opposition has been considered by the Court in this Memorandum Opinion.

On August 4, 2014, Burns pleaded guilty to one count of taking indecent liberties with a child by a custodian in violation of Va. Code § 18.2-370.1 in Case No. CR14-669-03, and two counts of aggravated sexual battery in violation of Va. Code § 18.2-67.3(1) in Case Nos. CR14-669-00, CR14-669-01, following his April 1, 2014, indictment on six counts in the Chesapeake Circuit Court: three counts of aggravated sexual battery and three counts of taking indecent liberties. Dkt. No. 17 at 73–74. The plea agreement was supported by a "Stipulation of Facts" signed by petitioner that stated the following:[4]

> [O]n or about or between March 1, 2009 to April 22, 2009, the defendant sexually molested A.B. on multiple occasions through inappropriate touching, fondling, and groping. These events occurred from the time that the victim, having a date of birth of August 13, 2001, was 8 years old. The events occurred at the victim's residence . . . in the City of Chesapeake.
> The victim would have testified that the defendant was living at her father's house and babysat her and her siblings occasionally for her father. The victim would have testified that between March 1, 2009 and April 22, 2009, when she was approximately 8 years old, the defendant was babysitting her. The victim would have testified that she went to sleep on her bunkbed and awoke on the defendant's bed. The victim would have testified that when she went to sleep, she was wearing pajamas, but she woke up with no clothes on. The victim would have testified that the defendant rubbed on her buttocks and touched her vagina with his hand. The victim also would have testified that the defendant placed his penis on her vagina and attempted to insert his penis into her vagina. The victim would have testified that she was frightened and that she felt pain. The victim would have also testified that the defendant kissed her and sucked her neck, giving her a "hickey" on her neck. The victim told her father and her mother about the incident.
> On May 1, 2009, the defendant submitted to a voluntary interview at Chesapeake Child Protective Services, with Chesapeake Child Protective Services Investigator, Wendy Holland. The defendant denied the allegations, but told Ms. Holland that the victim "flashed him a lot" and showed him her vagina. The defendant stated that the victim would "hit on him" and would "climb on top of him" while he was in bed. The defendant stated that this happened "no more than five times." The defendant stated that he "might have touched (the victim) while he was sleeping." The defendant stated that he would kiss the victim's forehead

---

[4] At the plea hearing petitioner's counsel stated that petitioner "would not necessarily agree with [all] the facts as presented in the stipulation of the Commonwealth," but he nevertheless, wished "to go ahead and maintain pleas of guilty." When asked by the Commonwealth, petitioner agreed that "if this case had gone to trial, this is what the Commonwealth's evidence would be." Plea Hr'g Trans. at 7–8.

and then she would look up and kiss him on the mouth. The defendant stated that this happened two or three times.

Stipulation of Facts, Dkt. No. 17 at 71–72. The plea agreement provided, in relevant part, that "[t]he Commonwealth agrees that the Attorney for the Commonwealth will not argue for an active term of incarceration that would exceed eleven years (11 years) in the Virginia State Penitentiary." Plea Agreement, Dkt. No. 17 at 73. The circuit court sentenced Burns in accordance with the plea agreement to a total of 50 years' imprisonment with an active sentence of eleven years.[5] See Sentencing Order, Dkt. No. 17 at 161–63.

Burns appealed the length of his sentences in the Court of Appeals of Virginia, arguing that "[t]he Trial Court abused its discretion when it imposed an excessive sentence that did not account for mitigating circumstances in [his] life. (Presented under the 'ends of justice' exception, Rule 5A:18)." Pet. for App., Dkt. No. 15 at 5. On September 23, 2015, the Court of Appeals denied petitioner's appeal. Order Record No. 0558-15-1, Dkt. No. 15 at 30–31. Burns subsequently appealed to the Supreme Court of Virginia, which refused his appeal on June 2, 2016. Record No. 151600, Dkt. No. 15 at 35.

On October 25, 2016, Burns filed a petition for a writ of habeas corpus in the Supreme Court of Virginia, setting forth his claims in an accompanying 40-page memorandum titled "Present Petition." Dkt. No. 16 at 58–97. The Supreme Court of Virginia dismissed the state habeas petition on April 6, 2017, because Burns' claims failed to satisfy the requirements of Strickland v. Washington, 466 U.S. 668 (1984), were not reviewable under Anderson v. Warden, 281 S.E.2d 885 (Va. 1981), or were not cognizable under Slayton v. Parrigan, 205 S.E.2d 680, 682 (Va. 1974).[6] Dkt. No. 16 at 184–201.

---

[5] Petitioner was sentenced to eleven years on each of the aggravated sexual battery counts and ten years on the indecent liberties count. The sentencing court suspended 18 years and ordered the remaining thirty two years to be served concurrently. Dkt. No. 17 at 161–63.

[6] The Court declined to consider Burns' "Return Brief." See Dkt. No. 16 at 184–201.

## II. Instant Petition

On October 13, 2017, Burns timely filed the instant petition for a writ of habeas corpus raising three grounds for relief.[7] Petitioner has also filed an opposition.[8]

### Ground One

In the "Ground One" section of his form petition, Burns incorporates by reference his "Appendix A," by directing the Court to the "Present Petition Page [of], Appendix A, claims A-H for grounds and arguments already listed." The "Present Petition" section of the petition is an

---

[7] In addition to his form § 2254 habeas petition, Burns has filed several "exhibits" and "appendices," including "Appendix E," which is titled "Motion for ~~Appeal~~ 2254." Dkt. No. 1-5 at 1. According to Burns, the motion seeks to "appeal the state of Virginia's denial of [his] habeas corpus [petition] . . . [and to] respond to each argument put forth by the Supreme Court [of Virginia] so as to refute them and prove to this [C]ourt that such errors have been committed by the state and that it must be heard now by this Honorable Court." Id. If Burns intended to appeal the Supreme Court of Virginia's dismissal of his habeas petition, the appropriate recourse would have been to submit a timely petition for a writ of certiorari to the United States Supreme Court, which he failed to do. Appendix E is not referenced in Burns' federal habeas corpus petition. In addition, Rule 2(c)(1) of the Rules Governing 2254 Cases states that a "petition must specify all the grounds of relief available to the petitioner" and does not contemplate raising claims in an appendix. Therefore, the arguments in Appendix E are not part of Burns' federal habeas petition. See also Rule 2(d) of the Rules Governing 2254 Cases ("[T]he petition must substantially follow either the form appended to these rules or a form prescribed by a local district-court rule."); Local Civil Rule 83.4 ("All pro se petitions for writs of habeas corpora must be filed on a set of standardized forms . . . ."). Nevertheless, nearly all of the arguments advanced in Appendix E are restatements of those raised in his petition and, as a result, they will be addressed by this Court. The remaining claims in Appendix E were never properly exhausted in the Supreme Court of Virginia.

[8] Petitioner's "Note of Opposition" raises several new claims, including a claim that his plea was involuntary because his defense counsel advised him that "under a subsequent conviction under 18.2-67.5:3, subsequent violent sexual offense, [he] would face mandatory time (20 years per aggravated sexual assault and 5 per indecent liberties [with] a minor) for a total of seventy-five years" and counsel "committed a grievous offense" by making such a "misrepresentation." Dkt. No. 19 at 3. Petitioner raises additional new claims in the "New Evidence" section of his Note of Opposition. See id. at 59–61. Petitioner's newly raised claims are not discussed because they are not properly before this Court: it is well accepted that a party, even one proceeding pro se, cannot amend his complaint by asserting new claims in an opposition brief to a dispositive motion. Butts v. Ofogh, 2:09cv140 (E.D. Va. Mar. 1, 2010) (citing Shanahan v. City of Chicago, 82 F.3d 776, 781 (7th Cit. 1996) (holding that a complaint cannot be amended by a brief in opposition to a motion for summary judgment)).

4

exact copy of the 40-page memorandum petitioner filed in support of his state habeas petition in which he asserts the following claims, including several sub-claims:

A) INVOLUNTARY, COERCED & UNKNOWING PLEA (1-3)
B) BRADY VIOLATION (3-6)
C) COURT & PROS. MISCONDUCT (6-0)
D) POLICE MISCONDUCT (9-90
E) PROS. MISCONDUCT (9-11)
F) INEFFECTIVE ASSISTANCE OF COUNSEL (11-25)
G) CRUEL & UNUSUAL PUNISHMENT (25-35)
H) INSUFFIENCY OF EVIDENCE (36-37)

The Supreme Court of Virginia grouped together similar or related claims and sub-claims, addressing them in as twenty-seven distinct claims. Dkt. No. 16 at 184–201. Respondent has similarly addressed each of the twenty-seven claims in his brief in support of his Motion to Dismiss. Id. at 184–201; Dkt. No. 13. In addition, petitioner does not dispute the state habeas court's re-characterization of his claims and admits that the Supreme Court of Virginia "sums [up] the original petition with considerable accuracy" in its dismissal. See Dkt. No. 1-5 at 1. For consistency, this Court will rely on the state habeas court's characterization of petitioner's "Ground One" claims, using the numeration provided by respondent.

### *Claim 1*

In portions of claims (A)(1), (B), (F), and (H) and in claim (F)(6), petitioner contends he was denied the effective assistance of counsel because his first appointed counsel, Terrance Martin, forced him to plead guilty even though petitioner wished to proceed to trial. Petitioner explains Martin did nothing on petitioner's behalf and was aware of evidence or information that could have been used to defend petitioner at trial, including:

(1) investigative reports that, several years prior to petitioner's indictment for his instant offenses, concluded there was not enough evidence to prosecute the petitioner;

(2) the Commonwealth had produced no new evidence since those reports were generated;

(3) petitioner's young victim, A.B., and her two siblings gave inconsistent or unreliable statements regarding whether petitioner abused A.B., possibly because they were scared of their mother who likely pressured the children to inculpate petitioner because she held a "grudge" against him for helping her ex-husband take care of the children during their custody battle;

5

(4) A.B. intimidated two unnamed witnesses to petitioner's molestation of A.B., either of whom may have aided petitioner's defense;

(5) no physical evidence corroborated that petitioner abused A.B.; and

(6) mitigating evidence that petitioner was physically, emotionally, and sexually abused during his childhood and adolescence.

Petitioner adds that Martin did not inform petitioner of his plea agreement until the day he was scheduled to go to trial and told petitioner he was unprepared for trial because he had not worked on petitioner's case for the preceding month. Petitioner claims Martin neglected to prepare for petitioner's trial because petitioner informed Martin he was retaining new counsel. Petitioner describes also that Martin informed him the trial court would not grant petitioner a continuance to retain new counsel and that the court would force petitioner to proceed to trial if he claimed he was being pressured to accept the plea agreement. Petitioner explains he had retained new counsel who then declined representation two days before petitioner's scheduled trial and that the trial court did in fact reject petitioner's request for another continuance just before petitioner pled guilty. Petitioner argues that, under these circumstances, he was left with the untenable choice of pleading guilty despite wanting to proceed to trial or proceeding to trial with an unprepared Martin, who had done nothing to defend petitioner. Petitioner claims an unnamed witness who was present at his plea hearing can attest that petitioner did not want to accept his plea agreement.

Dkt. No. 16 at 184 –85.

### *Claim 2*

In other portions of claims (A)(1) and (B), petitioner appears to contend he was denied the effective assistance of counsel because Martin disregarded petitioner's request that Martin obtain a hearing on A.B.'s competency to testify. Petitioner argues Martin could have supported a claim that A.B. was incompetent to testify because of her young age and inconsistent statements to investigators.

Id. at 187.

### *Claim 3*

In portions of claims (A)(1), (B), (F), (F)(1), and (F)(3), petitioner contends he was denied the effective assistance of counsel because Martin failed to discover or appreciate that the Commonwealth withheld either exculpatory evidence or evidence that impeached the Commonwealth's potential witnesses. Petitioner believes this evidence may have been in the form of A.B.'s two or three undisclosed statements to investigators, AB.'s siblings' statements to investigators, or police reports and Department of Social Services ("DSS") reports concluding claims petitioner molested A.B. were "unfounded." Petitioner acknowledges he does not know what the allegedly withheld "police or victim or witness statements in fact say" because he has never seen them. However, petitioner speculates there is "high probability" the evidence he believes the

Commonwealth withheld would have been material and could have changed the outcome of his trial.

Id. at 188.

### *Claim 4*

In claim (A)(2) and in a portion of claim (C), petitioner contends the trial court erred in denying petitioner's motion to continue his trial so that petitioner could retain substitute counsel after petitioner said at his plea hearing he was unsatisfied with Martin's assistance. Petitioner also claims the trial court erred in denying petitioner's two motions "for pro bono counsel" to replace Martin. Petitioner explains he repeatedly informed the court Martin was incompetent and representing petitioner under an irreconcilable conflict of interest but the court did not inquire into the matter. Petitioner argues these errors undermined the knowing and voluntariness of his guilty pleas and that the trial court should have held additional hearings regarding petitioner's innocence and dissatisfaction with Martin.

Id. at 189.

### *Claim 5*

In portions of claims (C) and (G), petitioner contends the trial court was biased against male sex offenders, which caused the court to impose a disproportionate sentence that violated the Eighth Amendment. Petitioner argues that, in combination, his sentence, the requirement he register as a sex offender, and the court fees he must pay are cruel and unusual punishment.

Id.

### *Claim 6*

In claim (A)(3) and a portion of claim (B), petitioner contends the trial court erred in denying petitioner's "motion for further discovery" and, thereby, aided the Commonwealth in withholding exculpatory evidence.

Id. at 189–90.

### *Claim 7*

In portions of claims (A), (B), (C), (E), and (H), petitioner contends the Commonwealth withheld exculpatory evidence or evidence that impeached the credibility of A.B. or other potential Commonwealth witnesses.

Id. at 190.

### *Claim 8*

In claim (D) and a portion of claim (E), petitioner contends he was the victim of police and prosecutorial misconduct because officers at one time determined there was not enough evidence to charge petitioner but, several years later, decided the evidence was sufficient to prosecute despite having no new evidence. Petitioner claims this decision was improperly based on irrelevant information Chesapeake police received from Norfolk police regarding allegations petitioner had sexually abused a child in Norfolk. Petitioner alleges that, as a result, he was "over charged" with six offenses despite there being minimal reliable evidence.

Id.

### *Claim 9*

In a portion of claim (E), petitioner contends he was the victim of prosecutorial misconduct because the Commonwealth improperly coerced petitioner to waive his preliminary hearing by threatening to forego any offer of a plea agreement. Petitioner contends that, due to the gravity of his many charges, he felt he had no choice but to waive his preliminary hearing in the event he needed to negotiate a plea agreement later in the proceedings.

Id.

### *Claim 10*

In a portion of claim (F) and in claim (F)(2), petitioner contends he was denied the effective assistance of counsel because Martin failed to meet and correspond with petitioner sufficiently. Petitioner explains that, despite petitioner's letters and complaints, Martin did not meet with him for the first time until two days before petitioner's preliminary hearing, which was approximately two months after Martin was appointed to petitioner's case. Petitioner claims that, thereafter, Martin visited petitioner rarely and usually only before court dates. Petitioner claims Martin also did not respond to petitioner's letters attempting to plan a defense and did not discuss defense strategy with petitioner and, accordingly, could have done little to prepare petitioner's case.

Id. at 191.

### *Claim 11*

In portions of claims (E) and (F) and in claims (F)(1) and (F)(4), petitioner contends he was denied the effective assistance of counsel because Martin allowed the Commonwealth to impermissibly coerce petitioner to waive his preliminary hearing with the threat that the Commonwealth would not entertain plea negotiations. Petitioner claims Martin knew petitioner desired a preliminary

hearing so he could confront the potential witnesses against him, especially because A.B. had already made inconsistent statements, but Martin refused to object to the Commonwealth's misconduct. Petitioner speculates a preliminary hearing could have tested the strength of the Commonwealth's cases, yielded information beneficial to petitioner's defense, or been fatal to some or all of petitioner's charges. Petitioner alleges Martin first consulted him about the possibility of waiving his preliminary hearing during their first meeting, two days before the hearing was to occur.

Id. at 191–92.

### Claim 12

In portions of claims (B), (F), and in claim (F)(3), petitioner contends he was denied the effective assistance of counsel because Martin did not investigate or secure potentially exculpating or beneficial evidence, despite petitioner's request that Martin do so. For example, petitioner claims Martin should have obtained a police report that, several years prior to petitioner's indictment, concluded there was insufficient information to pursue charges against petitioner. Petitioner claims Martin also neglected conflicting "DSS reports" and "potential defense witnesses," including A.B.'s father, A.B.'s father's coworker's [sic], and A.B.'s siblings, who petitioner believes could have supplied evidence A.B.'s mother had a "grudge" against petitioner. Petitioner explains evidence of this "grudge" could have helped support petitioner's theory that A.B.'s mother orchestrated A.B.'s allegations against petitioner and explained why investigators initially believed the allegations against petitioner were insufficient to support charges or further investigation. Finally, petitioner claims Martin failed to discover an unnamed witness "who could have refuted [A.B.'s] testimony."

Id. at 192–93.

### Claim 13

In another portion of claim (F) and in an unnumbered claim, petitioner contends he was denied the effective assistance of counsel because Martin did not move to suppress A.B.'s prior statements or potential testimony due to her inconsistent statements to investigators.

Id. at 193.

### Claim 14

In claim (F)(5) and a portion of claim (F), petitioner contends he was denied the effective assistance of counsel because Martin refused to request a continuance so that Martin could prepare a defense. Petitioner alleges Martin believed petitioner was retaining substitute counsel, and, as a result, admitted he had done no work on petitioner's case in the month preceding petitioner's

scheduled trial, which became petitioner's plea hearing. Petitioner explains he was attempting to retain counsel and that his arrangements fell through two days before his scheduled trial. Petitioner claims he informed Martin of this on the day trial was to begin but that Martin refused to support petitioner's request for a continuance. Petitioner alleges [that] Martin advised [him] that the court would not grant petitioner a continuance and that, if petitioner said he was being forced to plead guilty, the court would not accept the plea agreement and would force petitioner to proceed with trial on all six of his charges. Petitioner contends an unnamed witness who saw Martin and petitioner interact immediately before petitioner's plea hearing can support these allegations.

Id. at 194.

### Claim 15

In another portion of claim (F), petitioner appears to contend he was denied the effective assistance of counsel because Martin did not negotiate a better plea agreement by leveraging the Commonwealth's weak case.

Id.

### Claim 16

In another portion of claim (F), petitioner contends Martin's shortcomings were so substantial that he failed to subject petitioner's case to any adversarial testing and, therefore, prejudice should be presumed.

Id. at 195.

### Claim 17

In an unnumbered claim, petitioner contends he was denied the effective assistance of counsel because the attorneys who represented petitioner during sentencing, James Broccoletti and his associate, R. Leeman, failed to follow petitioner's express direction and request or investigate the potentially exculpatory evidence petitioner believed Martin neglected. Petitioner claims his desire was to use that evidence to secure a "mistrial," by which it appears petitioner may mean withdrawal of pleas. Petitioner alleges that, although Broccoletti filed a motion for discovery materials, he did nothing else to determine whether the Commonwealth improperly withheld evidence, nor did he do any other investigation.

Petitioner alleges Broccoletti's and Leeman's lack of investigation came to petitioner's attention the day before petitioner's sentencing hearing when Broccoletti said he had put no effort into discovering evidence that might exculpate petitioner. Petitioner alleges Broccoletti then advised that, without knowing what "the police and DSS reports would say" or what the testimony of any witnesses might be, it would be foolhardy for petitioner to withdraw his pleas.

Petitioner claims that, under the circumstances, Broccoletti left petitioner with no choice but to proceed with sentencing and forgo attempting to withdraw his pleas, as he had adamantly wished to do.

Id. at 195–96.

### Claim 18

In another unnumbered claim, petitioner contends he was denied the effective assistance of counsel because Broccoletti failed to investigate petitioner's "life-long history or physical, sexual, emotional, and neglectful abuse" at the hands of petitioner's older brother and mother. Petitioner appears to suggest that Broccoletti might have called unnamed witnesses or experts to present evidence of the abuse petitioner suffered and the effect it had on petitioner. Petitioner contends that, instead, Broccoletti chose to portray a factually unsupported "broken boy story" at petitioner's sentencing hearing. Petitioner suggests he might have received a more lenient sentence if Broccoletti had proceeded as petitioner suggests. Petitioner appears to blame Broccoletti's shortcoming on the fact that Broccoletti did not personally visit petitioner or discuss any sentencing strategy with him until the day before petitioner's sentencing hearing and, to that point, had relied on Leeman to interact with petitioner, despite petitioner's many requests to meet with Broccoletti.

Id. at 196–97.

### Claim 19

In another unnumbered claim, petitioner appears to contend that Broccoletti's and Leeman's neglect was so substantial that they failed to subject petitioner's case to any adversarial testing and, therefore, prejudice should be presumed.

Id. at 197.

### Claim 20

In another unnumbered claim, petitioner contends he was denied the effective assistance of appellate counsel because Martin did not meet or correspond with petitioner regarding issues for appeal. Petitioner claims he mailed letters to Martin suggesting issues for appeal but received no response and that Martin did not raise the claims petitioner suggested.

Id. at 197–98.

### Claim 21

In another unnumbered claim, petitioner appears to contend Martin's actions in connection with prosecuting petitioner's appeal were so substandard that prejudice to the outcome of petitioner's appeal should be presumed.

Id. at 198.

### Claim 22

Interspersed throughout petitioner's many claims, petitioner appears to contend he was denied the effective assistance of counsel because, both at trial and on appeal, Martin represented petitioner despite a conflict of interest. Petitioner appears to base this assertion on the various ways in which petitioner believes Martin rendered substandard assistance or disregarded petitioner's requests.

Id.

### Claim 23

In another unnumbered claim, petitioner appears to contend the Court of Appeals erred in failing to hold a hearing on or considering petitioner's complaints regarding Martin's appointment to represent petitioner on appeal.

Id. at 199.

### Claim 24

In a portion of claim (G), petitioner appears to contend the Court of Appeals should have considered his claim that his sentence is cruel and unusual and violates the Eighth Amendment.

Id.

### Claim 25

In a portion of claim (G), petitioner contends he was denied the effective assistance of counsel because none of his attorneys informed him he may be subject to civil commitment as a sexually violent predator under Code § 37.2-906. Petitioner claims that, had he known this, he would not have pled guilty.

Id.

### Claim 26

In another portion of claim (G), petitioner contends he is the victim of cruel and unusual punishment due to the conditions of his confinement. Petitioner complains that he has been needlessly or retributively (1) placed in solitary confinement, (2) denied adequate recreation time, (3) made to reside in a cell with

a clogged toilet, (4) restrained in handcuffs or chains, (5) provided inadequate or no medical care for numerous maladies, (6) deprived of a drinking cup, and (7) made the target of inmate violence by prison employees. Petitioner alleges he has suffered significant physical and psychological harm as a result of these conditions.

Id. at 200.

### *Claim 27*

In a portion of claim (H), petitioner contends the evidence was insufficient to support his conviction because the only evidence against him was the inconsistent, uncorroborated statements of A.B., who was manipulated by her mother.

Id. at 201.

In addition to these claims listed in Appendix A, in the blank space provided under "Ground One" of the form petition for "supporting facts and law," Burns seeks, for the first time, to "amend[] . . . claim C" to include information concerning the court's decision to begin his plea proceeding "without [him] on 9/4/14" even though the court was "well aware" that he "made [a] real effort to find new counsel and that with more time[, Burns] would have – and did– f[i]nd new counsel."

### Ground Two

In Ground Two of the petition, Burns alleges that because respondent "failed as opposing counsel to rebut/dispute claims A, B, C, D, E and H . . . any claim not expressly refuted, opposed and denied must be held to be true by well-established law."[9] Id.

### Ground Three

In Ground Three of the petition, Burns alleges the Supreme Court of Virginia erred under Virginia Criminal Procedure "Ch 9:7" when it failed to appoint counsel to represent him during his state habeas proceedings. Id. In his view, Virginia "law requires counsel [to] be appointed"

---

[9] In a three-page "Summary of Case," attached to his federal habeas corpus petition form, Burns further alleges the Supreme Court of Virginia erred in denying his habeas corpus petition in light of the respondent's alleged failure to rebut his claims.

for pro se habeas petitioners, and he should be permitted to raise this claim now because Virginia law "bars" claims of ineffective assistance of counsel on direct appeal. Id.

### III. Exhaustion and Procedural Default.

Before bringing a federal habeas petition, a state prisoner must first exhaust his claims in the appropriate state court. 28 U.S.C. § 2254(b); Granberry v Greer, 481 U.S. 129 (1987); Rose v. Lundy, 455 U.S. 509 (1982); Preiser v. Rodriguez, 411 U.S. 475 (1973). To comply with the exhaustion requirement, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Thus, a petitioner convicted in Virginia first must have presented the same factual and legal claims raised in his federal habeas corpus application to the Supreme Court of Virginia on direct appeal or in a state habeas corpus petition. See, e.g., Duncan v. Henry, 513 U.S. 364 (1995). In this case, only claims 1 through 27 of Ground One have been presented to the Supreme Court of Virginia for review; Ground Two, Ground Three, and the new claim set forth in the "supporting facts and law" portion of Ground One of the petition—that the circuit court's decision to begin the plea proceeding "without [petitioner] on 9/4/14"—have not been presented to the Supreme Court of Virginia.[10]

Although petitioner did not properly present Grounds Two and Three and the new claim in Ground One to the Supreme Court of Virginia, they nonetheless are treated as exhausted

---

[10] To the extent petitioner may have raised any of these claims in his response to the motion to dismiss filed in the Supreme Court of Virginia, those claims were not properly presented in petitioner's state habeas petition because they were not presented in the original petition and petitioner was not authorized to file a response to the motion to dismiss. See Va. Code § 8.01-654 (requiring that habeas petitions "contain all allegations the facts of which are known to petitioner at the time of filing . . . ."); Taylor v. Murray, 855 F. Supp. 124, 126–27 (E.D. Va. 1994) ("The Brief [petitioner] submitted in reply to the responsive pleading was not authorized under the Rules [of the Supreme Court of Virginia]. The Supreme Court of Virginia was not obligated to accept, read, or consider it. Indeed, the presumption is the Court followed its own rules and did not consider it.").

because petitioner is now precluded from raising them in state court. See Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000) ("A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court.") Specifically, these claims are procedurally defaulted under Virginia Code § 8.01-654(B)(2), which bars successive state habeas applications. The Fourth Circuit has "held on numerous occasions that the procedural default rule set forth in § 8.01-654(B)(2) constitutes an adequate and independent state-law ground for decision." Mackall v. Angelone, 131 F.3d 442, 446 (4th Cir. 1997). Because "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas review of the defaulted claim," Baker, 220 F.3d at 288 (citing Gray v. Netherland, 518 U.S. 152, 161 (1996)), Ground Two, Ground Three, and the new claim in Ground One discussed above are procedurally defaulted from federal consideration. See Bassette v. Thompson, 915 F.2d 932 (4th Cir. 1990).

In addition, the Supreme Court of Virginia concluded that Burns could have raised Ground One claims 4, 5, 6, 7, 8, 9, 23, and 24 at trial or on direct appeal, but he failed to do so. Specifically, the Supreme Court of Virginia held that these claims were "non-jurisdictional issue[s that should] have been raised during the direct appeal process." Dkt. No. 16 at 189. Because petitioner did not raise claims 4, 5, 6, 7, 8, 9, 23, and 24, on direct appeal, the Supreme Court of Virginia concluded that they were "not cognizable in a petition for a writ of habeas corpus" and barred under Slayton v. Parrigan, 205 S.E.2d 680, 682 (Va. 1970). "This rule, set forth in Slayton, constitutes an adequate and independent state ground for the denial of federal habeas relief." Beck v. Angelone, 173 F. Supp. 2d 461, 473 (E.D. Va.), report and recommendation adopted, 113 F. Supp. 2d 941 (E.D. Va. 2000).

Federal courts may not review barred claims absent a showing of cause and prejudice or a fundamental miscarriage of justice, such as actual innocence. Harris v. Reed, 489 U.S. 255, 260

(1989). The existence of cause ordinarily turns upon a showing of (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim. See Coleman v. Thompson, 501 U.S. 722, 753-54 (1991); Clozza v. Murray, 913 F.2d 1092, 1104 (4th Cir. 1990); Clanton v. Muncy, 845 F.2d 1238, 1241-42 (4th Cir. 1988). Importantly, a court need not consider the issue of prejudice in the absence of cause. See Kornahrens v. Evatt, 66 F.3d 1350, 1359 (4th Cir. 1995), cert. denied, 517 U.S. 1171 (1996). Petitioner has not provided any reasons why there is cause, prejudice, or a fundamental miscarriage of justice. Accordingly, Grounds Two and Three, and the following claims from Ground One 4, 5, 6, 7, 8, 9, 23, and 24, as well as the new claims related to petitioner's absence at the beginning of the plea hearing will be dismissed as procedurally defaulted.

### IV. Standard of Review

When a state court has addressed the merits of a claim raised in a federal habeas corpus petition, a federal court may not grant the petition on that particular claim unless the state court's adjudication was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts presented at the trial. 28 U.S.C. § 2254(d)(1)-(2). This test erects a "formidable barrier to federal habeas relief" for claims adjudicated on the merits. Burt v. Titlow, 134 S. Ct. 10, 16 (2013). Under this standard, for a state prisoner to obtain habeas relief, he "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011).

The evaluation of whether a state court decision is "contrary to" or "an unreasonable application of" federal law is based upon an independent review of each standard. See Williams

v. Taylor, 529 U.S. 362, 412-13 (2000). A state court determination violates the "contrary to" standard if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Id. at 413. When reviewing the state court's findings, the federal court is limited to the record before the state court at the time of the decision. See Cullen v. Pinholster, 563 U.S. 170 (2011).

Under the "unreasonable application" clause, the writ should be granted only if the federal court finds that the state court "identifies the correct governing legal principle from [the United States Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. Importantly, this standard of reasonableness is an objective one, and does not allow a federal court to review simply for plain error. Id. at 409-10; see also Lockyer v. Andrade, 538 U.S. 63, 75 (2003). A federal court should review the state court determination with deference and cannot grant the writ simply because it concludes that the state court incorrectly determined the legal standard. See Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002) (internal citations omitted). A federal court reviewing a habeas petition "presume[s] the [state] court's factual findings to be sound unless [petitioner] rebuts 'the presumption of correctness by clear and convincing evidence.'" Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. 2254(e)(1)); see, e.g., Lenz v. Washington, 444 F.3d 295, 300-01 (4th Cir. 2006).

## V. Analysis

*Claim 1*

In Claim 1, Burns asserts that trial counsel[11] was ineffective because he "<u>forced</u> and <u>coerced</u> [Burns] into taking a plea that [he] did not WANT nor DESIRE" and did nothing on Burns' behalf, despite trial counsel's alleged awareness of various "exonerating evidence" that could have been used to defend Burns at trial. (emphasis in original). The Supreme Court of Virginia rejected Claim 1, observing that a defendant's representations regarding the validity of his guilty plea and the effectiveness of his attorney during a plea colloquy are normally binding and may not be set aside on habeas corpus, absent a suitable justification, which it found lacking in petitioner's case. The court relied on <u>Anderson v. Warden</u>, 281 S.E.2d 885, 888 (Va. 1981), which requires a petitioner to offer a valid reason why he should not be bound by his representations during a plea colloquy, in rejecting petitioner's claims. In addition, the state habeas court considered petitioner's affirmative representations at the plea hearing that he "had enough time to discuss with [his] lawyer any and all possible defenses," "talked with [his lawyer] about how [he] should plead," "decide[d] for [him]self to plead guilty," "understood what the Commonwealth's evidence would be, and . . . didn't want to take the risk that [he] would be found guilty . . . on these facts," understood that he was waiving his right to trial and his "right to confront and cross-examine witnesses and evidence against [him]," understood "that there are collateral consequences to a felony conviction," and wanted "the benefit of [the plea] agreement." Plea H'rg Trans., Dkt. No. 17 at 8–18.

---

[11] Although Burns never went to trial because he pleaded guilty to the convictions he is challenging, this Court will refer to Terrance Martin, the lawyer who represented petitioner during the plea proceedings, as "trial counsel."

The Supreme Court of Virginia's conclusion is not "contrary to" or "an unreasonable application of" federal law, nor is it based on an unreasonable determination of the facts. In determining the constitutionality of a guilty plea,

> [t]he standard . . . is whether the guilty plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. In applying this standard, courts look to the totality of the circumstances surrounding the guilty plea, granting the defendant's solemn declaration of guilt a presumption of truthfulness.

Beck v. Angelone, 261 F.3d 377, 394 (4th Cir. 2001) (citations omitted). Declarations made "in open court carry a strong presumption of veracity," and "the subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Thus, absent clear and convincing evidence to the contrary, a defendant is bound by his representations at a plea colloquy concerning the voluntariness of the plea and the adequacy of his representation. Beck, 261 F.3d at 396. Petitioner has not adduced "clear or convincing" evidence, or any credible evidence at all, that his plea was not knowing or voluntary. Indeed, petitioner's conclusory statements that his plea was coerced are in direct conflict with his contemporaneous statements at the plea hearing.

In addition, the state habeas court concluded that counsel was not ineffective for advising petitioner to plead guilty. Specifically, the court held that there was nothing unreasonable about counsel's "lack of enthusiasm" to "proceed to trial and attempt to discredit [the victim] or her siblings' purportedly inconsistent accusations against petitioner" because petitioner had not provided counsel with specific examples of "the purportedly rampant inconsistencies in [the victim's] statements to investigators." Dkt. No. 16 at 186. The court also concluded that

petitioner failed to show "that a reasonable defendant might have rejected petitioner's plea agreement." Dkt. No. 16 at 186.

To prevail on an ineffective assistance of counsel claim, a petitioner must meet the two-pronged test established in Strickland v. Washington, 466 U.S. 668 (1984). Under this test, a petitioner must prove both that his attorney's performance was so deficient "that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment," and that this performance prejudiced the outcome of petitioner's trial. Strickland, 466 U.S. at 687. To meet the second prong, petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. The two prongs, deficient performance and prejudice, constitute "separate and distinct elements." Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994). Therefore, a court can appropriately dismiss an ineffective assistance of counsel claim on either prong. Strickland, 466 U.S. at 697; see also Bell v. Cone, 535 U.S. 685, 695 (2002) (internal citations omitted) ("Without proof of both deficient performance and prejudice to the defendant . . . the sentence or conviction should stand."). A court reviewing a claim of ineffective assistance of counsel must presume that counsel acted competently, and should determine the merits of the claim based on the information available to the attorney at the time of the trial. See, e.g., Bell, 535 U.S. at 695; Burket v. Angelone, 208 F.3d 172, 189 (4th Cir. 2000).

The Strickland test "applies to challenges to guilty pleas based on ineffective assistance of counsel." Hill v. Lockhart, 474 U.S. 52, 58 (1985). With regard to the "prejudice" prong in the context of a guilty plea, a petitioner must show that, "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59; see also Burket, 208 F.3d at 190. In reviewing a petitioner's claim of ineffective assistance of counsel regarding a

guilty plea, "the representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." Blackledge, 431 U.S. at 73-74.

Petitioner admitted that if his case had gone to trial the Commonwealth would have adduced evidence supporting the facts in the plea agreement. Among the evidence supporting petitioner's guilt are his voluntary statements to Chesapeake Child Protective Services Investigator Wendy Holland that the victim "flashed him a lot," "hit on him," would "climb on top of him," as well as his statement that he "might have touched [the victim] while he was sleeping." Dkt. No. 17 at 71. During the plea colloquy, petitioner admitted his guilty plea was voluntary, that he reviewed it with counsel, and that he understood the terms of the agreement. Although petitioner did advise the court at his plea hearing that he was not satisfied with counsel's services because counsel did not request additional discovery or other unspecified motions that petitioner desired,[12] he nevertheless, subsequently entered his guilty pleas. In addition, petitioner's assertions that counsel acted unreasonably when he failed "to discredit [the victim] or her siblings' purportedly inconsistent accusations against petitioner," are not supported by the evidence.

Moreover, petitioner's arguments that a reasonable defendant in his position would not have accepted the guilty plea are belied by his acceptance of the plea hearing despite his purported dissatisfaction. Thus, the state habeas court's decision to reject Claim 1 is neither contrary to, nor an unreasonable application of, existing federal law, and the state habeas court's determination does not rest upon an unreasonable finding of fact. Accordingly, the state habeas court's ruling is entitled to deference and Claim 1 will be dismissed

---

[12] Counsel made initial discovery requests from the Commonwealth that requested any information tending to exculpate petitioner, as well as any evidence that could be used to impeach the Commonwealth's witnesses.

*Claim 2*

In Claim 2, petitioner alleges that trial counsel was ineffective because he ignored petitioner's request for a hearing on the victim's competency due to her young age and inconsistent statements to investigators. The state habeas court dismissed Claim 2 on the merits, concluding that Burns failed to satisfy either prong of Strickland. Dkt. No. 16 at 187–88. Specifically, it found that "[t]he record . . . demonstrates that [the victim] was eight years old when petitioner began molesting her" and almost fourteen years old when petitioner pleaded guilty, and that petitioner had no "specific evidence or information [counsel] could have used to argue [her] youth or level of maturity rendered her incompetent to testify." Id at 187. Indeed, the court concluded that the victim's inconsistent statements concerning her sexual abuse, which petitioner sought to use to prove her incompetence, "would not categorically render [the victim] incompetent to testify," and that petitioner failed to provide other "specific evidence or information [counsel] could have used to argue [the victim's] youth or level of maturity rendered her incompetent to testify." Id. Thus, trial counsel could have reasonably concluded a competency hearing was unnecessary, "would not be granted, or would not produce a favorable result." Id. at 188.

Under federal law, children are presumed competent to testify, and a competency examination involving a child should be ordered only if "compelling reasons" exist such as the inability to differentiate between reality and fantasy or mental illness. United States v. Snyder, 189 F.3d 640, 645 (7th Cir. 1999). There is no specific age at which a child will be deemed competent to testify; however, children eight years old, the age of the victim at the time of the alleged abuse, and younger have been deemed competent to testify by federal courts. See United States v. Frazier, 678 F. Supp. 499, 502 (E.D. Pa. 1986) (four-year-old); Kollock v. Glunt, No.

CIV. 13-656, 2014 WL 4080757, at *15 (E.D. Pa. Aug. 18, 2014) (eight-year-old). Moreover, if a witness has the capacity to testify truthfully, it is best left to the fact-finder to determine his or her truthfulness. See United States v. Spotted War Bonnet, 882 F.2d 1360, 1363 (8th Cir. 1989). Because petitioner's stated reasons for a competency hearing are the victim's age and her allegedly inconsistent statements concerning the abuse, and such reasons are not "compelling reasons" for a competency hearing under federal law, the Supreme Court of Virginia's decision was not "contrary to" or "an unreasonable application" of federal law, or based on an unreasonable interpretation of the facts, and Claim 2 will be dismissed.

*Claim 3*

Burns alleges he was denied the effective assistance of counsel because counsel failed to discover "exculpatory" or "impeachment" evidence, including the victim's allegedly undisclosed statements to investigators, the victim's siblings' statements to investigators, and police and social services reports concluding that the allegations against petitioner were "unfounded." Petitioner did not know what the statements "in fact say," but he asserts there was a "high probability" the allegedly withheld evidence would have been relevant and altered the result of his proceedings.[13]

The Supreme Court of Virginia dismissed petitioner's claim, concluding that it failed to satisfy either the performance or prejudice prong of Strickland. Specifically, the court concluded that counsel's "request for discovery materials and the Commonwealth's responsive disclosures demonstrate[] that [counsel] made a broad and comprehensive discovery request of the Commonwealth, which included a demand for any potentially exculpatory evidence," and

---

[13] In his "Opposition" brief petitioner specifies, for the first time, some of the alleged inconsistencies in the statements by the victim and her siblings, see, e.g., Dkt. No. 19 at 7–10; however, these newly introduced facts will not be considered because on habeas review a federal court is limited to the record before the state court at the time of the decision. See Cullen v. Pinholster, 563 U.S. 170 (2011).

petitioner "failed to identify any circumstance that might have alerted [counsel that] the Commonwealth's disclosures were incomplete." Dkt. No. 16 at 188. In addition, the court held that petitioner failed to show that counsel's alleged neglect "resulted in petitioner being deprived of any valuable evidence that was in the Commonwealth's possession." Id.

This Court concludes that the Supreme Court of Virginia's decision was neither "contrary to" nor "an unreasonable application of" federal law, nor was it based on an unreasonable interpretation of the facts. During his state habeas proceedings, petitioner did not explain the specific evidence that he believed counsel should have obtained during discovery. Absent any specific evidence tending to exculpate petitioner or strongly discredit the victim, petitioner could not demonstrate to the state habeas court how counsel's alleged failures during discovery would have produced a different result. In addition, nothing in the record suggests that counsel acted unreasonably. Indeed, in his Motion for Discovery and Inspection trial counsel requested, among other things, "all information of whatever form . . . which tends to exculpate the [d]efendant or reduce the penalty which he might suffer should he be convicted in this cause through an indication of his innocence or through a potential impeachment of any prosecution witness, be it by inconsistent statements or otherwise," and "all evidence affecting the credibility of any prosecution witness." Dkt. No. 17 at 133–34. Moreover, the Commonwealth's response, which included, "among other things, a '[DSS] In Home Investigation Narrative dated May 1, 2009' and audio and transcript records of two interviews [the victim] had with investigators," did not give trial counsel any basis to conclude that the Commonwealth's disclosures were incomplete. Accordingly, petitioner has failed so satisfy either prong of Strickland and Claim 3 will be dismissed.

*Claim 7*

Burns alleges the Commonwealth withheld exculpatory evidence or impeachment evidence relating to the victim and several other potential witnesses. The Supreme Court of Virginia, in its merits review of Claim 7, concluded that "a voluntary and intelligent guilty plea waives all non-jurisdictional defenses antecedent to a guilty plea." Dkt. No. 16 at 190.

When a defendant, in open court, has pleaded guilty to the offense with which he is charged, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett v. Henderson, 411 U.S. 258, 267 (1973); see also United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993) ("[A] guilty plea constitutes a waiver of all nonjurisdictional defects . . . .") (citing Parker v. Ross, 470 F.2d 1092, 1093 (4th Cir.1972)). Because petitioner's guilty plea was voluntary and knowing, the state habeas court's decision barring petitioner's non-jurisdictional claims is neither contrary to, nor an unreasonable application of, existing federal law. Additionally, as discussed above in greater detail, the state habeas court's determination does not rest upon an unreasonable finding of fact. Therefore, Claim 7 will be dismissed.

*Claim 10*

Burns asserts that trial counsel was ineffective because counsel failed to meet and correspond with him as frequently as he requested, even though counsel was "duty bound to come see [petitioner] at the earliest possible opportunity, or at least communicate by any other means or to send another attorney until such times as that he could come himself." Dkt. No. 1-1 Specifically, Burns alleges trial counsel did not meet with him until "two (2) days prior to his preliminary hearing date," and that counsel generally only visited him "right before court dates." Id. According to Burns, [t]here was never any sort of defense strategy discussed or planned and

[counsel] ignored all requests that he obtain the exculpatory/impeaching evidence and in no way put up any sort of fight in this case;" however, Burns' subsequent descriptions of his interactions with counsel belie those assertions. Specifically, petitioner acknowledges that counsel believed it would be more beneficial to petitioner to pursue a plea agreement than to confront the victim at a preliminary hearing. Id.

The Supreme Court of Virginia dismissed petitioner's claim on two grounds: first, it concluded that this claim was barred under Anderson, 281 S.E.2d at 888, because "[p]etitioner failed to offer a valid reason why he should not be bound by his representation when pleading guilty that he fully understood the charges against him and had discussed them with [counsel], that he had sufficient . . . time [to] discuss with Martin any possible defenses, and that he had decided for himself to plead guilty after discussing the matter with [counsel]," Dkt. No. 16 at 191; and second, it concluded that petitioner's claim did not satisfy either prong of Strickland because he "failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, he would have pleaded not guilty, would have proceeded to trial, and the outcome of the proceedings would have been different." Id.

The court's dismissal of Claim 10 on either basis was not contrary to or an unreasonable application of federal law and it does not rest upon an unreasonable finding of facts. The rule relied on by the state habeas court in dismissing petitioner's claims—that an individual is ordinarily bound by his or her representations during a plea hearing—is not contrary to federal law. See Beck v. Angelone, 261 F.3d 377, 396 (4th Cir. 2001) ("Absent clear and convincing evidence to the contrary, [petitioner] is bound by the representations he made during the plea colloquy.") (internal quotation marks and citation omitted). Petitioner has not provided clear and

convincing evidence showing that his plea was not knowingly and voluntarily made. In addition, the record fails to demonstrate how trial counsel's alleged inattentiveness prejudiced petitioner, affected his decision to plead guilty, or how additional contact may have altered his decision to plead guilty. Petitioner's conclusory allegations that counsel lacked a defense strategy are belied by the record, which indicates that counsel felt that pursuing a plea agreement was petitioner's best option. For those reasons the state habeas court's decision was not contrary to or an unreasonable application of federal law, nor was it based on an unreasonable interpretation of the facts, and Claim 10 will be dismissed.

### Claim 11

Burns asserts that trial counsel was ineffective for failing to challenge the victim's credibility at a preliminary hearing, even though the prosecutor threatened to withdraw any plea agreements if petitioner proceeded with a preliminary hearing. Dkt. No. 1-1. The Supreme Court of Virginia dismissed petitioner's claim, concluding that it failed to satisfy either prong of the Strickland test. Specifically, the court concluded that counsel "could have reasonably determined the Commonwealth permissibly threatened to forego plea negotiations unless petitioner waived his preliminary hearing," and petitioner failed to proffer any evidence indicating that "the incidence or outcome of [a preliminary hearing] would have altered his decision to accept his plea agreement." Dkt. No. 16 at 192.

The state habeas court's decision was not contrary to or an unreasonable application of federal law, nor does it rest upon an unreasonable finding of facts. It is well established that a prosecutor may condition a plea agreement on a defendant's waiver of certain rights. United States v. Ruiz, 536 U.S. 622, 633 (2002). Defense counsel, in advising a defendant whether to take a plea agreement, will balance the rights that a defendant must forfeit with the benefits of

any agreement offered. Here, petitioner was indicted on six counts of sexually abusing a minor and faced a substantial amount of prison time. During his interview with social services investigators, petitioner indicated that he may have touched the victim, and made other statements that could have indicated his guilt to a fact-finder. In light of the evidence against petitioner and the Commonwealth's offer to cut in half the number of charges against him, it was not unreasonable for counsel to advise petitioner to forego his preliminary hearing. The reasonableness of such a decision is underscored by petitioner's inability to provide counsel with any specific exculpatory evidence apart from "inconsistencies" in the victim's statements. In addition, petitioner has not proffered any evidence or alleged any facts indicating that, had he received a preliminary hearing, the incidence or outcome of that proceeding would have altered his decision to accept his plea agreement. Accordingly, Claim 11 will be dismissed.

### Claim 12

Burns alleges that he was denied the effective assistance of counsel because trial counsel "refus[ed] to request very likely exculpatory evidence . . . known to be in the prosecutor's possession" as well as other evidence that he believed would support his claims that the victim's mother orchestrated the allegations against him, which included testimony from the victim's father. The Supreme Court of Virginia denied petitioner's claim, concluding that he failed to satisfy the prejudice prong of the two part test set forth in Strickland because he had not shown that counsel "neglected evidence that may have altered petitioner's decision to accept a plea agreement," he had not proffered the substance of the alleged exculpatory statements that various witnesses would have made on his behalf, and he had not demonstrated that he would have pleaded guilty, but for counsel's errors. Dkt. No. 16 at 193.

There is nothing in the record to suggest that counsel refused to request any exculpatory evidence from the prosecution. Indeed, counsel made a broad discovery request to the Commonwealth that included any exculpatory evidence. In addition, petitioner did not provide counsel with proffers from any individuals whom he alleged would testify on his behalf, and this Court finds petitioner's unsupported assertions that the victim's father would have testified on his behalf to be totally incredible. Based on the absence of evidence to support petitioner's claim and his failure to indicate specifically how such information would have influenced his decision to plead guilty, the Supreme Court of Virginia was not unreasonable in concluding that petitioner was not prejudiced by counsel's alleged actions. Accordingly, Claim 12 will be dismissed.

### Claim 13

Burns asserts that trial counsel was ineffective because he did not move to suppress the victim's prior statements or her potential testimony on the basis that she provided inconsistent statements to investigators. Dkt. No. 16 at 193. The Supreme Court of Virginia rejected Claim 13 because petitioner "has not provided evidence of A.B.'s statements to investigators nor has petitioner described with any specificity the alleged inconsistency in those statements," and in any event, such inconsistent statements "would not have rendered those statements or her potential trial testimony inadmissible." Id.

Petitioner has not advanced any basis under federal law pursuant to which the victim's testimony would have been inadmissible because she had previously made inconsistent statements to investigators. Indeed, defense counsel could have reasonably concluded that the victim's prior inconsistent statements would have been useful in impeaching the victim during cross examination. See Fed. R. Evid. 613. Thus, petitioner failed to indicate how counsel's performance was deficient, and Claim 13 will be dismissed.

*Claim 14*

Burns asserts he was denied the effective assistance of trial counsel because counsel did not "argue[] for a continuance to prepare a defense." Dkt. No. 1-1. Specifically, petitioner argues that counsel, "thinking he was to be replaced, . . . admitted he had done no work of <u>any sort</u> as it related to [petitioner's] case for all the month of July (with trial in August-the 4th) and was thus <u>not prepared</u> to go to trial." <u>Id.</u> (emphasis in original). The Supreme Court of Virginia rejected Claim 14, holding that petitioner failed to "satisfy the 'prejudice' prong of the two-part test enunciated in <u>Strickland</u>." Dkt. No. 16 at 194. Specifically, the court found that "the transcript of petitioner's plea hearing demonstrates that [counsel] did present petitioner's request for a continuance so that petitioner might retain counsel and the trial court denied that request." <u>Id.</u> In addition, the court concluded that petitioner "failed to establish how or why his decision to accept his plea agreement might have changed had he had more time to consider the matter," or that, "but for counsel's alleged errors, he would have pleaded not guilty, would have proceeded to trial, and the outcome of the proceedings would have been different." <u>Id.</u>

The Supreme Court of Virginia's holding was not contrary to or an unreasonable application of federal law, and it was not premised on an unreasonable finding of facts. Petitioner asserts, without additional detail, that counsel "admitted he had done no work . . . [on petitioner's case] for all the month of July," and therefore, was unprepared to go to trial. The record demonstrates that counsel requested discovery in preparation for trial and had discussed the Commonwealth's plea offer prior to the hearing on August 4, 2014. In addition, when counsel presented petitioner's motion for a continuance, the court advised him that the matter had been "continued from June the 20th," and the court would not grant any further continuances in light of petitioner's inability to obtain substitute counsel. Plea H'rg Trans., Dkt. No. 17 at 3. Without any specific facts indicating how counsel was constitutionally deficient, there is a "strong presumption that counsel's conduct fails

within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. In the present case, petitioner's Claim 14 is a legal conclusion without any factual support, and therefore it must be dismissed. Blackledge v. Allison, 431 U.S. at 74.

### Claim 15

Burns asserts that counsel was ineffective for failing to negotiate a more favorable plea agreement in light of the Commonwealth's "weak case." The Supreme Court of Virginia rejected this claim, concluding that it failed "to satisfy the 'performance' or the 'prejudice' prong of the two-part test enunciated in Strickland." Dkt. No. 16 at 194. Specifically, the court held that petitioner "alleged no circumstance indicating [counsel] should have suspected the Commonwealth was willing to offer more than to dismiss half of petitioner's charges and recommend a sentence of only eleven years' active imprisonment," and that counsel could have reasonably believed "this was the best offer the Commonwealth would make." Id. at 194–95.

There is nothing in the record to indicate the Commonwealth would have offered petitioner a better plea agreement. Moreover, the weaknesses alleged by petitioner, namely the lack of physical evidence tying him to the crime, were not fatal to the Commonwealth's case. See, e.g., Zoomie v. Lamas, Civ. No. 12–0362, 2012 WL 4932014, at *7–8 (E.D. Pa. Aug. 29, 2012) (Caracappa, M.J) approved and adopted, 2012 WL 4932665 (Oct. 17, 2012)(Schiller, J.) (state court conclusion that child victim testimony is sufficient to support conviction in absence of physical evidence is not contrary to federal precedent). Accordingly, the Supreme Court of Virginia's decision was not contrary to or an unreasonable application of federal law and was not premised on an unreasonable finding of facts, and Claim 15 must be dismissed.

### Claim 16

Burns alleges that trial counsel "totally and absolutely failed to subject [his] case to any sort of adversarial testing," and therefore, prejudice should be presumed. Dkt. No. 1-1. The

Supreme Court of Virginia rejected Claim 16 because petitioner's allegations failed to establish any of the three circumstances that are so likely to prejudice an accused that the cost of litigating their effect is unjustified: (1) he was completely denied counsel at a critical stage of the proceedings; (2) counsel entirely failed to subject the Commonwealth's case to meaningful adversarial testing; (3) counsel was called upon to represent him under circumstances under which competent counsel likely could not. Dkt. No. 16 at 195.

These circumstances are equally applicable under federal law. See United States v. Cronic, 466 U.S. 648, 658–59 (1984) (listing the same three circumstances). In addition, the record demonstrates that petitioner was represented at each stage in the proceeding. Indeed, although petitioner stated that he wished to replace his appointed trial counsel with private counsel, trial counsel nevertheless represented petitioner at his plea hearing. The record further indicates that the Commonwealth's case was subjected to some adversarial testing, as trial counsel requested discovery and was able to negotiate a plea agreement that resulted in the dismissal of half of petitioner's charges. Therefore, the Supreme Court of Virginia's Decision was not contrary to or an unreasonable application of federal law, and did not rely on an unreasonable interpretation of fact, and Claim 16 will be dismissed.

### *Claim 17*

Burns alleges that sentencing counsel were ineffective because they "failed to do as he told them" and did not investigate the allegedly exculpatory evidence that trial counsel had ignored. In his view, this potentially exculpatory evidence could have been used to obtain a "mistrial." According to Burns, sentencing counsel filed a motion for discovery, but did nothing further to determine whether the Commonwealth improperly withheld evidence or discover any

additional evidence, and therefore left him with no choice but to proceed with sentencing rather than attempt to withdraw his pleas.

The Supreme Court of Virginia rejected petitioner's claim because it "satisfie[d] neither the 'performance' nor the 'prejudice' prong of the two-part test enunciated in Strickland." Specifically, the court held that "[t]he record, including the transcript of petitioner's sentencing, demonstrates that [sentencing counsel] informed the [sentencing court] that, 'as recently as [the day before]' petitioner's sentencing, [counsel] had discussed with petitioner his dissatisfaction with [trial counsel] and had informed petitioner of his absolute right to ask the court to withdraw his plea." It also held that sentencing counsel advised the sentencing court that he informed petitioner that if he withdrew his pleas, the Commonwealth would be able to bring all six counts for which he was indicted in a new trial, and when provided with this information, petitioner decided to "stand by his pleas." The court further concluded that petitioner had failed to "describe with any specificity" the undiscovered or undisclosed evidence that would be beneficial to his defense or proffer any evidence to indicate that sentencing counsel could have discovered such evidence through further investigation. Dkt. No. 16 at 196.

The Supreme Court of Virginia's decision was not contrary to or an unreasonable interpretation of federal law and does not rest on an unreasonable interpretation of fact. Sentencing counsel filed a "Motion for Discovery and Inspection" requiring the Commonwealth to provide any information tending to exculpate petitioner or affecting the credibility of any prosecution witness. Dkt. No 17 at 33–38. Apart from petitioner's conclusory assertion that additional evidence existed, there is nothing in the record to indicate that the Commonwealth was withholding any evidence, and petitioner cannot describe with any specificity the allegedly exculpatory information that sentencing counsel failed to obtain. In addition, the sentencing

transcript reveals that counsel advised petitioner that he had "an absolute right to petition the Court to withdraw his guilty plea if he so desired," but after counsel had reviewed some of the implications of that decision, petitioner indicated that he wanted to "go forward with the plea agreement and not raise any other issue with respect to that." Sent. H'rg Trans, Dkt. No. 17 at 3– 4. Notably, petitioner did not contest counsel's representations. It is well established under federal law that a defendant's contemporaneous representations at a change-of-plea or sentencing hearing are strongly presumed to be true. See Nguyen v. United States, 114 F.3d 699, 704 (8th Cir.1997). Petitioner has done nothing to rebut counsel's earlier representation on his behalf, and therefore, petitioner's Claim 17 will be denied.

### Claim 18

Burns alleges that sentencing counsel failed to provide effective assistance because they did not investigate his "life-long history or physical, sexual, emotional, and neglectful abuse" by his older brother and mother. In petitioner's view, he may have received a more lenient sentence if counsel had obtained "medical experts to testify as to the abuse and its consequences," and "back[ed] up [his claims] with the witnesses that would have been willing to testify to [the abuse]." Dkt. No. 1-1. The Supreme Court of Virginia rejected this claim because the record revealed that "the psychosexual evaluation of contained detailed information about petitioner's difficult childhood and adolescence and the emotional, physical, and sexual abuse petitioner self-reported" and that counsel "drew on all of this information when arguing that the circumstances of petitioner's life mitigated against a harsh punishment." Dkt. No. 16 at 197. The court also held that petitioner failed to identify any additional, non-cumulative evidence that further investigation would have revealed. Id. Therefore, it concluded, petitioner "failed to demonstrate

that counsel's performance was deficient" or that there was a reasonable probably that counsel's alleged errors affected the outcome of the proceeding. Id.

A federal court reviewing a habeas petition "presume[s] the [state] court's factual findings to be sound unless [petitioner] rebuts 'the presumption of correctness by clear and convincing evidence.'" Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. 2254(e)(1)); see, e.g., Lenz v. Washington, 444 F.3d 295, 300-01 (4th Cir. 2006). Because petitioner has failed to produce any evidence tending to show that the sentencing court did not consider plaintiff's personal history when issuing his sentence, the Supreme Court of Virginia's factual findings will be presumed true. Accordingly, the Supreme Court of Virginia's decision was not contrary to an unreasonable application of federal law or supported by an unreasonable interpretation of facts, and Claim 18 will be dismissed.

### *Claim 19*

Burns asserts that sentencing counsels representation was so inadequate that they failed to subject "any part of [his] case to adversarial testing and did not attempt to get [him] a low/lenient sentence," and therefore, prejudice should have been presumed.[14] Dkt. No. 1-1. The Supreme Court of Virginia rejected Claim 19 because petitioner's allegations failed to establish any of the three circumstances that are so likely to prejudice an accused that the cost of litigating their effect is unjustified: (1) he was completely denied counsel at a critical stage of the proceedings; (2) counsel entirely failed to subject the Commonwealth's case to meaningful adversarial testing; (3) counsel was called upon to represent him under circumstances under which competent counsel likely could not. Dkt. No. 16 at 197. As previously stated, these

---

[14] Petitioner mistakenly believes that, despite sentencing counsels representation of him, he "still got the maximum sentence under the capped guidelines, eleven (11) years to serve." Dkt. No. 1-1. Although the plea agreement recommended a cap of eleven years, the sentencing court retains ultimate discretion over petitioner's sentencing and could have sentenced him to a longer active sentence than the one recommended by the Commonwealth.

circumstances are equally applicable under federal law. See United States v. Cronic, 466 U.S. 648, 658–59 (1984) (listing the same three circumstances).

The record demonstrates that petitioner was represented at each stage in the proceeding. In addition, the record reveals that sentencing counsel argued for leniency at petitioner's sentencing hearing. Indeed, sentencing counsel advised the prosecutor, who had previously argued for a twenty year active sentence, that the plea agreement stated that the Commonwealth would not recommend more than eleven years of active time. Sent. H'rg Trans., Dkt. No. 17 at 12. Sentencing counsel also discussed the "significant mitigating factors for the court to look at," such as petitioner's difficult childhood, which included "his mother putting him up for adoption and abandoning him" and "the sexual abuse that he suffered," in arguing for a sentence at the low end of the guidelines. Id. at 14. There is nothing to suggest that the third circumstance applies to petitioner's case. Accordingly, the state habeas court's decision was neither contrary to nor an unreasonable application of federal law, and was not premised upon an unreasonable interpretation of facts, and Claim 19 will be dismissed.

*Claim 20*

Burns alleges that appellate counsel was ineffective because he "filed [an appellate] brief without ever having discussed any of the claims to be raised or the issues petitioner [had seen] in the case." Dkt. No. 1-1. The Supreme Court of Virginia rejected petitioner's claim, concluding that it failed to satisfy either the "performance" or the "prejudice" prong of the test set forth in Strickland. Specifically, the court observed that "the selection of issues to address on appeal is [generally] left to the discretion of appellate counsel, and counsel need not address every possible issue on appeal," and petitioner did not identify the issues that he would have liked raised by appellate counsel on appeal. Dkt. No. 16 at 195.

The rule that appellate counsel need not address every colorable issue a defendant seeks to raise on appeal applies equally in federal law.[15] Jones v. Barnes, 463 U.S. 745, 751 (1983). Because petitioner has failed to allege what claims appellate counsel failed to raise on appeal, and why those claims may have been meritorious, the state habeas court's holding was not an unreasonable interpretation of federal law; nor was it premised upon an unreasonable finding of facts, and Claim 20 will be dismissed.

### *Claim 21*

Burns alleges that appellate counsel, through his allegedly ineffective representation, "denied [him] counsel at every stage of the appeal," and therefore, prejudice must be presumed. Dkt. No. 1-1. The Supreme Court of Virginia rejected Claim 21 because petitioner's allegations failed to establish any of the three circumstances that are so likely to prejudice an accused that the cost of litigating their effect is unjustified. Dkt. No. 16 at 195. As previously stated, these circumstances are equally applicable under federal law. See Cronic, 466 U.S. at 658–59 (listing the same three circumstances); see also Matire v. Wainwright, 811 F.2d 1430, 1435 (11th Cir. 1987) (holding that Strickland v. Washington applies to appellate counsel).

Petitioner's assertions that appellate counsel was ineffective amount to nothing more than conclusory allegations. Indeed, the record reveals that appellate counsel filed a twelve page petition for appeal arguing that that trial court erred when it failed to sufficiently consider mitigating factors at petitioner's sentencing. Accordingly, the state habeas court's holding was not an unreasonable interpretation of federal law; nor was it premised upon an unreasonable finding of facts, and Claim 21 will be dismissed.

---

[15] At one point petitioner appears to allege that trial counsel, who also represented defendant on appeal, had a conflict of interest because "his very actions at trial [were] the issue of appeal;" however, he failed to elaborate on what those actions were.

_Claim 22_

Burns alleges he was denied the effective assistance of counsel because his appointed trial counsel was the same as his appellate counsel, which presented a "conflict of interest" and "a definite and absolute irreconcilable difference." Dkt. No. 1-1. The Supreme Court of Virginia rejected Claim 22 because petitioner failed to demonstrate that a conflict of interest between him and appellate counsel actually existed. Dkt. No. 16 at 195–96. Specifically, the court concluded that petitioner "described no instance in which [counsel's] personal interests or obligations to a third party clashed with the obligations of petitioner." Id. at 198–99.

To establish a conflict of interest under federal law, a petitioner must show that his interests "diverge[d] [from his attorney's] with respect to a material factual or legal issue or to a course of action" and that the conflict adversely affected the attorney's representation. Cuyler v. Sullivan, 446 U.S. 335, 356 (4th Cir. 1980). Nothing in the record indicates that petitioner's interests diverged from appellate counsel's interests at any time. Moreover, petitioner did not specifically allege how any purported conflict of interest negatively affected appellate counsel's representation of him. Accordingly, the Supreme Court of Virginia's decision concerning Claim 22 was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, or that its decision was not based on an unreasonable determination of the facts, and Claim 22 will be dismissed.

_Claim 25_

Petitioner asserts that trial, sentencing, and appellate counsel were ineffective because they failed to advise him that he could be subject to civil commitment as a sexually violent predator under Va. Code § 37.2-906. Dkt. No. 16 at 199. According to petitioner, he would not have pleaded guilty had he been aware of the possibility of civil commitment. The Supreme

Court of Virginia rejected this claim, concluding that petitioner's claim "fail[ed] to satisfy the 'performance' prong of the two-part test enunciated in Strickland." Id. at 200. Specifically, the court held that counsel had no obligation to inform petitioner of the collateral consequences of his guilty plea and "[t]he threat of civil commitment is a collateral consequence that a defendant need not be advised of before entering a voluntary and knowing plea." Id.

The Supreme Court of Virginia's decision was not contrary to, or an unreasonable application of, clearly established federal law, nor was it an unreasonable interpretation of the facts. This Court has previously held that "no Supreme Court precedent establishes that the possibility of civil commitment is a plea-related consequence an attorney must disclose and [because] . . . some circuits have concluded . . . that disclosure of the possibility of civil commitment is not required, it is proper to conclude that the State Court's decision was a reasonable application and construction of Padilla and Strickland." Kim v. Dir., Virginia Dep't of Corr., 103 F. Supp. 3d 749, 758 (E.D. Va. 2015). Accordingly, Claim 25 will be dismissed.

### *Claim 26*

In Claim 26, Burns alleges that he has been subjected to cruel and unusual punishment due to the conditions of his confinement. Dkt. No. 1-1. The Supreme Court of Virginia rejected this claim, concluding that it was not cognizable in a petition for writ of habeas corpus. Habeas corpus relief is only appropriate when a state prisoner attacks the fact or duration of confinement. See Preiser v. Rodriguez, 411 U.S. 475 (1973). Because petitioner is not challenging either his conviction or the length of his sentence, Claim 26 is not cognizable under § 2254.

### *Claim 27*

Petitioner contends that the evidence was insufficient to support his convictions. The Supreme Court of Virginia rejected petitioner's claim as barred because "a voluntary and intelligent guilty plea waives all non-jurisdictional defenses antecedent to a guilty plea. Dkt. No. 16 at 201.

When a defendant, in open court, has pleaded guilty to the offense with which he is charged, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett v. Henderson, 411 U.S. 258, 267 (1973); see also United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993) ("[A] guilty plea constitutes a waiver of all nonjurisdictional defects . . . .") (citing Parker v. Ross, 470 F.2d 1092, 1093 (4th Cir.1972)). Because petitioner's guilty plea was voluntary and knowing, the state habeas court's decision barring petitioner's claims is neither contrary to, nor an unreasonable application of, existing federal law. Additionally, as discussed above in greater detail, the state habeas court's determination does not rest upon an unreasonable finding of fact. Therefore, Claim 27 will be dismissed.

## VI. Conclusion

For the reasons discussed above this petition will be dismissed, with prejudice, by an Order to be issued with this Memorandum Opinion and petitioner's Motion to Continue will be denied as moot.

Entered this __20ᵗʰ__ day of ____Aug____ 2018.


Alexandria, Virginia                          _____/s/_____
                                              Liam O'Grady
                                              United States District Judge